

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

April 21, 2026 **MEMO ENDORSED**

*Sentencing is scheduled for August 18, 2026 at 10:00A.m. The Court orders that a Pre-sentence report be prepared. The Court will conduct a Curcio hearing at 2:00p.m. on May 7, 2026. After the hearing, the Government will arrange for CJA Counsel to be appointed to Consult with the defendant as to the Conflict issues.*

**VIA ECF**

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:   *United States v. Marcelo Quiroga*, 22 Cr. 20 (PGG)

**SO ORDERED:**

Dear Judge Gardephe:

*[signature]*
Paul G. Gardephe, U.S.D.J.

Dated: *[handwritten]*

The Government respectfully submits this letter in an abundance of caution to request that the Court schedule a hearing to conduct an inquiry pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982), regarding the representation of defendant Marcelo Quiroga ("Quiroga") by Jonathan T. Savella, Esq. The Government also requests that the Court ask the duty Criminal Justice Act counsel to come to court to be available to advise Quiroga at the conference regarding issues relevant to his representation by Mr. Savella.

As the Court is aware, Quiroga's co-defendants in this case include Peter Khaimov, who was previously represented by James Froccaro, Esq. in this case and in a case in the Eastern District of New York (the "EDNY Case"). The EDNY Case related to a factually similar but separate criminal conspiracy to that charged in this case. Before this case was charged and before Mr. Savella began representing Quiroga, Mr. Savella assisted Mr. Froccaro with review of discovery produced to Khaimov in the EDNY Case. As a result of that assistance and in an abundance of caution, the Government requests that Court conduct a Curcio hearing to confirm that Mr. Savella's continued representation of Quiroga is Quiroga's informed choice. The defense has no objection to this request.[1]

---

[1] The Government further requests that, at the conclusion of the Curcio hearing, the Court order a presentence report and set a sentencing date for Quiroga.

## Applicable Law

The Sixth Amendment provides a criminal defendant with the right to the effective assistance of counsel, which includes "the right to representation by conflict-free counsel." United States v. Schwarz, 283 F.3d 76, 90 (2d Cir. 2002).

District courts have two separate obligations where there is a possible conflict of interest. First, the district court has an "inquiry obligation" when it is apprised of the possibility of a conflict of interest, under which it must "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994). Second, if the district court finds after inquiry that the defendant's attorney suffers from an actual or potential conflict, the district court then has a "disqualification/waiver" obligation, under which it is required either to disqualify the attorney if the conflict is sufficiently severe, or, if the conflict may be waived, to conduct a Curcio inquiry to advise the defendant of the ramifications of the conflict and obtain a waiver of any conflict from the defendant.

Three types of conflicts of interest are the subject of judicial inquiry and can potentially result in the deprivation of the effective assistance of counsel: (1) a *per se* conflict; (2) an actual conflict; and (3) a potential conflict that results in prejudice to the defendant. *See* Armienti v. United States, 313 F.3d 807, 810 (2d Cir. 2002); United States v. John Doe No. 1, 272 F.3d 116, 125 (2d Cir. 2001); see also United States v. Peterson, 233 F. Supp. 2d 475, 489-92 (E.D.N.Y. 2002) (analyzing alleged conflict to determine whether it fell within any of these three categories).

In the Second Circuit, *per se* conflicts have been found only in two classes of cases: where trial counsel "is not authorized to practice law" and where trial counsel "is implicated in the very crime for which his or her client is on trial." Armienti v. United States, 234 F.3d 820, 823 (2d Cir. 2000); accord United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004); see also Solina v. United States, 709 F.2d 160, 164 (2d Cir. 1983) (unlicensed attorney); United States v. Cancilla, 725 F.2d 867, 868-70 (2d Cir. 1984) (attorney implicated in client's crime). The Second Circuit has repeatedly and consistently refused to extend the *per se* rule beyond these two proscribed categories. See United States v. Levy, 25 F.3d 146, 157 n.8 (2d Cir. 1994) ("[W]e have repeatedly stressed the limited reach of the *per se* rule, emphasizing that it applies only when a defendant's lawyer was unlicensed or had engaged in the defendant's crimes."); see also United States v. John Doe No. 1, 272 F.3d at 125 ("we have limited *per se* conflicts to [these] two instances"); Strouse v. Leonardo, 928 F.2d 548, 555 (2d Cir. 1991) ("[T]his court has repeatedly declined to extend the *per se* rule beyond the sort of egregious conduct present in Solina and Cancilla.") (internal quotation marks and citation omitted).

An actual conflict exists when "during the course of the representation, the attorney's and defendant's interests diverge with respect to a material legal or factual issue or to a course of action." United States v. Schwarz, 283 F.3d at 91 (applying standard derived from Cuyler v. Sullivan, 446 U.S. 335 (1980)). To show divergent interests, "[s]peculation is not enough." Triana v. United States, 205 F.3d 36, 42 (2d Cir. 2000). Nor is a "mere theoretical division of loyalties." Mickens v. Taylor, 535 U.S. 162, 171 (2002). There can be an actual conflict of interest only if "the attorney's current representation is impaired by the loyalty he owes a former client." United

States v. Leslie, 103 F.3d 1093, 1098 (2d Cir. 1997) (citing United States v. Malpiedi, 62 F.3d 465, 469 (2d Cir. 1995)).

Conflicts that do not fall into the categories of *per se* conflicts or actual conflicts are described as potential conflicts. See, e.g., Armienti v. United States, 234 F.3d at 824. "An attorney has a potential conflict of interest if 'the interests of the defendant may place the attorney under inconsistent duties at some time in the future.'" United States v. Perez, 325 F.3d 115, 125 (2d Cir. 2003) (quoting United States v. Kliti, 156 F.3d 150, 153 n.3 (2d Cir. 1998)). Conflicts "such as an attorney's representation of two or more defendants or his prior representation of a trial witness, are generally waivable." Perez, 325 F.3d at 125. However, "such a conflict might require a defendant to abandon a particular defense or line of questioning," and the defendant must "seek the legal advice of independent counsel and make an informed judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel." *Id.* (quoting United States v. Fulton, 5 F.3d 605, 613 (2d Cir. 1993)). If the defendant "can rationally opt to retain counsel of his choice despite a conflict, the court conduct[s] a Curcio hearing to determine whether the defendant knowingly and intelligently waives his right to conflict-free representation." *Id.*

The Supreme Court has stated that although a defendant may generally waive his Sixth Amendment right to a non-conflicted attorney, "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat v. United States, 486 U.S. 153, 159 (1988); see United States v. Fulton, 5 F.3d at 612. Where a conflict is so egregious that no rational defendant would knowingly and voluntarily desire the attorney's representation, then the court must disqualify the attorney. United States v. Levy, 25 F.3d at 152-53; see Holloway v. Arkansas, 435 U.S. 475, 484 (1978). Also, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat v. United States, 486 U.S. at 160.

Given that "[c]onflicts of interest are notoriously hard to predict . . . , even for those intimately familiar with those proceedings," it is important for "district courts [to] have latitude to permit or deny a defendant's waiver of such conflict." United States v. Jones, 381 F.3d at 120; Wheat, 486 U.S. at 160 (providing that district courts have "substantial latitude" in determining whether a conflict is waivable). Accordingly, even the risk of a potential conflict becoming an actual conflict is, in certain cases, sufficient to empower the district court to decline to accept a waiver. Jones, 381 F.3d at 121; United States v. Rahman, 105 F. Supp. 2d 220, 223 (S.D.N.Y. 1994) (Mukasey, C.J.) (stating that judicial assessment "must include . . . both a prudent awareness of how little can be predicted with certainty before a trial begins and a sober regard for how much can go wrong once a trial starts"). A district court's decision to disqualify defense counsel is reviewed on appeal "only for an abuse of discretion." United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993).

Finally, the Second Circuit has set forth the requirements for a Curcio procedure in detail:

At such a hearing, the trial court (1) advises the defendant of his right to representation by an attorney who has no conflict of interest, (2) instructs the

defendant as to the dangers arising from particular conflicts, (3) permits the defendant to confer with his chosen counsel, (4) encourages the defendant to seek advice from independent counsel, (5) allows a reasonable time for the defendant to make a decision, and (6) determines, preferably by means of questions that are likely to be answered in narrative form, whether the defendant understands the risk of representation by his present counsel and freely chooses to run them.

United States v. Perez, 325 F.3d at 119.

### Discussion

The Government is not aware of any conflict in Mr. Savella's continued representation of defendant Quiroga but in an abundance of caution requests a Curcio hearing because Mr. Savella assisted to some extent Mr. Froccaro's representation of Quiroga's co-defendant Khaimov in the EDNY Case.

On November 3, 2022, Khaimov plead guilty pursuant to a plea agreement to money laundering in the EDNY Case. As alleged in indictment in the EDNY Case, between August 2018 and August 2020, Khaimov and his brother Arkadiy Khaimov fraudulently opened and controlled approximately thirteen different pharmacies (the "EDNY Pharmacies") and concealed their involvement in the EDNY Pharmacies by paying straw owners to open bank accounts for the EDNY Pharmacies and by falsely representing their ownership of the EDNY Pharmacies to regulators. *See United States v. Peter Khaim and Arkadiy Khaimov*, 20-cr-580, (E.D.N.Y., Dec. 18, 2020) (Dkt. 1 ¶¶ 30-35). The Khaimovs then used the EDNY Pharmacies to falsely bill Medicare for medications that were never dispensed by the pharmacies or were not medically necessary. (*Id.* ¶¶ 36-39). The Khaimovs further laundered the fraud proceeds from the bank accounts of the EDNY Pharmacies to their personal possession using a network of shell companies (the "EDNY Shell Companies"). (*Id.* ¶¶ 42-47). The Khaimovs fabricated invoices to make it appear that the EDNY Shell Companies were selling pharmaceutical drugs to the EDNY Pharmacies, when in actuality the EDNY Shell Companies were solely engaged in money laundering. (*Id.*).

As the Court is aware, this case involved a long-running fraud scheme that, from at least 2014 up to and including 2021, exploited insurance programs designed to protect motor vehicle accident victims. Khaimov was one of the leaders of the scheme. Among other things, Khaimov and the other leaders of the scheme fraudulently owned and controlled more than a dozen medical professional corporations, including medical, acupuncture, and chiropractic practices, by paying licensed medical professionals to use their licenses to incorporate the professional corporations. Quiroga, a licensed chiropractor, incorporated two such chiropractic corporations, Southern Boulevard Chiropractic PC and Comfort Choice Chiropractic PC, as part of the scheme. In furtherance of the scheme, Quiroga also prescribed unnecessary and excessive medical treatments and overbilled insurance companies.

While the Government is not aware of any connection between Quiroga and the EDNY Case, because of the temporal and subject matter overlap between the EDNY Case and this case, it is theoretically possible that Mr. Savella, in reviewing discovery produced to Khaimov in the

EDNY Case, became aware of information that is relevant to his representation of Quiroga in this case. It is further theoretically possible, that, because of the context of that review, Mr. Savella would be bound not to use that information against Khaimov, which theoretically could impair his representation of Quiroga. For example, in the extremely unlikely event that Khaimov testified against Quiroga at a hearing, Mr. Savella's prior assistance of Khaimov in the EDNY Case could theoretically impact and or limit Mr. Savella's cross examination of Khaimov.

For the Court's convenience, the Government has enclosed proposed questions for the Curcio inquiry. As noted above, the Government also respectfully requests that the Court ask CJA counsel to come to court to be available to meet with and advise defendant Quiroga regarding his representation by Mr. Savella.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: ___/s/_____
Ryan Allison
Timothy V. Capozzi
Assistant United States Attorneys
(212) 637-2404

cc:    Jonathan T. Savella, Esq. (by email)

Case 1:22-cr-00020-PGG    Document 669    Filed 04/21/26    Page 6 of 8

**Government's Proposed *Curcio* Examination of**
**Defendant Marcelo Quiroga**

## I.    Introductory Questions to Establish Competence

Age
Education
Current medications
Alcohol, drugs, medications within past 24 hours
Is anything interfering with your ability to understand what is happening here today?

## II.    Questions Concerning Continued Representation of Marcelo Quiroga by Jonathan T. Savella, Esq.

A.    Are you aware that Mr. Savella previously assisted Peter Khaimov's lawyer in a criminal case in the Eastern District of New York?

B.    Do you understand that if Mr. Savella continues to represent you in this case, it could adversely affect his representation of you in this case. His prior involvement in the representation of Khaimov could affect the way that Mr. Savella considers and advises you with respect to what arguments to make to the Court, and what facts to bring to the Court's attention at your sentencing.

C.    Let me offer some examples.

    1.    While it may be unlikely that there will be witnesses called in connection with your sentencing in this case, to the extent witnesses are called, do you understand that it is possible that Mr. Savella may not vigorously cross-examine those witnesses if he believes that such cross-examination might be harmful to the interests of Khaimov?

    2.    Are you aware that Mr. Savella may have learned information from his review of discovery in the EDNY Case that may be helpful in defending you, but that he may be prohibited from using such information to defend you?

D.    Do you understand each of the examples that I have given you?

E.    Tell me in your own words what your understanding is of the potential issue created by Mr. Savella's prior assistance of Khaimov.

F.    Do you understand that the greatest danger to you is in the inability to foresee all of the possible conflicts that might arise because of Mr. Savella's prior involvement in the representation of Khaimov, on the one hand, and his current representation of you, on the other?

Case 1:22-cr-00020-PGG    Document 669    Filed 04/21/26    Page 7 of 8

### III.    The Right to Conflict-Free Representation

A. Do you understand that, in every criminal case, including this one, the defendant is entitled to assistance of counsel whose loyalty to him is undivided, who is not subject to any factor that might in any way intrude upon an attorney's loyalty to his interests? In other words, do you understand that you are entitled to an attorney who has only your interests in mind, and not the interests of any other client?

B. Have you received any inducements, promises or threats with regard to your choice of counsel in this case?

C. Have you consulted with any attorneys other than Mr. Savella about the dangers to you of Mr. Savella's continued representation of you in this case?

D. Do you understand that you have a right to consult with an attorney free from any conflict of interest about this issue, and that the Court will give you an opportunity to do that if there is any aspect of the information that I have conveyed to you today that you wish to discuss with a conflict-free attorney?

E. The Court is prepared to adjourn the remainder of this proceeding so that you may consult with an attorney other than Mr. Savella about what I have described to you today. In addition, the Court can appoint an attorney for you to consult on this matter if you cannot afford one. I have asked conflict-free counsel from our Criminal Justice Act panel to come to court today to be available to consult with you if you cannot afford an additional attorney to consult with about this issue of Mr. Savella's potential conflict. You can consult with that attorney now, or we can adjourn this conference to allow you time to consult with that attorney or some other attorney of your choosing at greater length, consider the attorney's advice, and return to Court.

F. Do you understand that if you decide to go forward with Mr. Savella, you will not be able to change your mind later about any conflict he may have.

G. After considering all that I have said today about the ways in which Mr. Savella's involvement in the representation of Khaimov may adversely affect your defense, would you like to consult with another attorney about Mr. Savella's continued representation of you? [If no.] Do you believe that it is in your best interest to continue with Mr. Savella as your attorney? Is that your wish?

H. Do you understand that by choosing to continue with Mr. Savella as your attorney, you are waiving your right to be represented by an attorney who has no conflict of interest?

I. Are you knowingly and voluntarily waiving your right to conflict-free representation?

J. Do you agree to waive any post-conviction argument, on appeal or otherwise, that by virtue of Mr. Savella's involvement in the representation of Khaimov, you were denied effective assistance of counsel by Mr. Savella?

Case 1:22-cr-00020-PGG     Document 669     Filed 04/21/26     Page 8 of 8

K. Is there anything that I have said that you wish to have explained further?